U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 OCT 28 PM 4: 12

CLERK
BY LM
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cr-00078-1 |
| | ) | |
| SEAN FIORE, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER DENYING DEFENDANT SEAN FIORE'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**
(Doc. 263)

Pending before the court is Defendant Sean Fiore's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 263.) Mr. Fiore contends he is entitled to relief because his defense counsel provided him with constitutionally ineffective assistance of counsel by failing to file additional motions to suppress.

Mr. Fiore, who was self-represented when he filed his motion, is represented by Chandler W. Matson, Esq., as court-appointed counsel. The government is represented by Assistant United States Attorneys Eduardo A. Palomo and Patrick Jasperse.

**I.    Factual and Procedural Background.**

On March 25, 2019, Homeland Security Investigations ("HSI") Special Agent ("SA") Caitlin Moynihan identified a device located at an IP address assigned to Mr. Fiore's residence that was associated with a file believed to contain child sexual abuse material ("CSAM"). Details of SA Moynihan's investigation were included in her affidavit in support of a search warrant for Mr. Fiore's residence:

> On March 25, 2019, [SA Moynihan] was conducting an online investigation on the BitTorrent network for offenders sharing child pornography. [She] initiated an investigation for a device at IP address 98.229.2.46 because it was associated with a torrent with the infohash: 32b58a925d17918f26a8159bce427c1e41458793. This torrent references one file which ha[d] been identified as being a file of investigative interest to child pornography investigations. Files of investigative interest are files

> that have been previously identified by law enforcement officers as files containing child exploitative material based on their SHA values.
>
> [] Using a computer running investigative BitTorrent software, [SA Moynihan] directly connected to the device at IP address 98.229.2.46. The user's bit Torrent software reported itself as: - UM1870-µTorrentMac 1.8.7.
>
> [] On Monday, March 25, 2019, between 1343 and 1434 EDT hours, [SA Moynihan] downloaded one incomplete file that the device at IP address 98.229.2.46 was making available. [She] viewed this file and consider[ed] it to contain child pornography.
>
> [] The device at IP address 98.229.2.46 was the sole candidate for the download, and as such, the file was downloaded directly from IP address 98.229.2.46.

(Doc. 319-1 at 8, ¶¶ 11-13(a).)

The investigative BitTorrent software used by the government, Torrential Downpour, "is a law enforcement surveillance software that is used exclusively by law enforcement. It is used to track, investigate, and eventually arrest those sharing child pornography through various [peer-to-peer] sharing networks." *United States v. Maurek*, 131 F. Supp. 3d 1258, 1261 (W.D. Okla. 2015).[1] Torrential Downpour "roams the internet and queries publicly available BitTorrent indices searching for IP addresses that have made public requests for specified torrents[,]" which "are known to include child pornography[.]" *United States v. Gonzales*, 2020 WL 5210821, at *1 (D. Ariz. Sept. 1, 2020). "Once Torrential Downpour [] detects an IP address that has associated itself with

---

[1] This court previously described BitTorrent as follows:

> BitTorrent is a peer-to-peer ("P2P") file sharing software that allows users to share files directly with other BitTorrent users. P2P software also allows a user to download multiple files at the same time from different computers, thereby increasing download speeds. To access P2P software, "a user must first obtain the P2P software, which can be downloaded from the Internet." During the installation of P2P software, a user may be able to reconfigure certain default settings including designating which folders on his or her computer will be made available to other BitTorrent users for download. "It is the computers linked together through the Internet using P2P software that form the BitTorrent network that allows for the sharing of digital files between users."

(Doc. 140 at 2) (alteration adopted) (internal citations omitted).

a torrent of interest, it reports information about the IP address and the computer's networking port[,]" and "[t]his information serves as a lead for officers to investigate using the Torrential Downpour program." *Id.* A unique feature of the software is "that [] it is designed to target and download files from a single IP address, as opposed to multiple sources, and restrict downloads to come from only that particular address[.]" *Maurek*, 131 F. Supp. 3d at 1261. "Torrential Downpour's direct connection capabilities [a]re *no different from other commercially available versions of BitTorrent* and it . . . ha[s] no rate of error." *Id.* (emphasis supplied).

HSI officers obtained the requested search warrant on May 9, 2019 and executed it on May 17, 2019. Based on the evidence recovered, Mr. Fiore was charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). (Doc. 7.)

In May 2019, Mr. Fiore retained Maryanne E. Kampmann, Esq., as his attorney.[2] In furtherance of her representation of Mr. Fiore, Attorney Kampmann hired computer experts Steven Verronneau and Dan Faria to review the discovery produced by the government. Mr. Verronneau produced a 29-page preliminary report and a 37-page final report detailing his forensic examination of Mr. Fiore's devices.

Attorney Kampmann filed four motions to suppress on Mr. Fiore's behalf. The Motion to Suppress Evidence (No Probable Cause), (Doc. 36), challenged the magistrate judge's finding of probable cause based on "a single incident of access[.]" (Doc. 317 at 1, ¶ 6) (internal quotation marks omitted) (citing *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015)). Therein, Attorney Kampmann argued that "there was not 'a fair probability' that evidence of a crime would be found in [Mr. Fiore's] home based on the agent's incomplete download of a file titled 'Siberian Mouse' nearly two months prior to execution of the search warrant." *Id.* at 1-2, ¶ 6 (alteration adopted) (internal quotation marks omitted). As a result, the facts of Mr. Fiore's case allegedly "suggested the

---

[2] Mr. Fiore later applied for appointment under the Criminal Justice Act ("CJA") and, on January 2, 2020, Attorney Kampmann was appointed as CJA counsel for Mr. Fiore. On November 6, 2020, Robert Sussman, Esq., joined Mr. Fiore's defense team as CJA co-counsel. References to "defense counsel" include both Attorneys Kampmann and Sussman.

inadvertent stumbling upon, rather than the intentional downloading of, child pornography." *Id.* at 2, ¶ 6.

Mr. Fiore's defense counsel subsequently submitted a Supplemental Memorandum of Law in Support of Motion to Suppress Evidence (No Probable Cause), (Doc. 128), in which counsel emphasized the "single incident of access" argument and noted that the government "appear[ed] to have confused a download process with 'storage[,]'[] as well as with the deliberate uploading (and sharing) of a file to the internet." (Doc. 317 at 7, ¶ 23) (internal quotation marks omitted) (quoting Doc. 128 at 5). On January 19, 2021, the court issued an Opinion and Order denying Mr. Fiore's motion to suppress for lack of probable cause, (Doc. 140), stating:

> The inquiry is not whether a suspect will be arrested and convicted but whether evidence of a particular crime is likely to be found in a particular place. *See United States v. Martin*, 426 F.3d 83, 86 (2d Cir. 2005) (observing "it is untenable to conclude that property may not be searched unless its occupant is reasonably suspected of a crime and is subject to arrest" and that all that is required is to "satisfactorily demonstrate to the magistrate that fruits, instrumentalities, or evidence of crime is located on the premises") (internal quotation marks omitted). When an IP address is the source of a file with an SHA hash value associated with child pornography, probable cause may be found even without a download. *See United States v. Thomas*, 2013 WL 6000484, at *23-24 (D. Vt. Nov. 8, 2013) (observing that "hash values provide information regarding a particular file's contents that is substantially more reliable than a file's name or size" and "even without a direct download, courts have consistently found probable cause exists when an IP address that appears to have accessed child pornography can be traced to an identifiable residence"), *aff'd*, 788 F.3d 345 (2d Cir. 2015); *see also United States v. Cartier*, 2007 WL 319648, at *2 (D.N.D. Jan. 30, 2007) (concluding search warrant application was supported by probable cause because "hash values are a reliable means of investigating child pornography because in practical application, a file's hash value is unique to that file[]").

*Id.* at 12-13 (alterations adopted). The court rejected Mr. Fiore's "assertion that his alleged single access to the Siberian Mouse video was consistent with 'inadvertently stumbling upon' it" because "probable cause does not require a search warrant affiant to either disclose or rule out all possible innocent explanations for suspicious conduct." *Id.*

4

at 12 (citations omitted). The court therefore concluded that a single download of child pornography from Mr. Fiore's IP address was sufficient to establish probable cause. *Id.* at 12-13.

Following the initial indictment, the government discovered additional incriminating electronic evidence on Mr. Fiore's devices, and he was charged in a Third Superseding Indictment with: (1) intent that a murder be committed in violation of 13 V.S.A. §§ 2301 and 2311 and 18 U.S.C. § 956 in violation of 18 U.S.C. § 1958(a); (2) knowing receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); (3) knowing possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2); (4) conspiring to commit kidnapping and murder outside the United States in violation of 18 U.S.C. §§ 956(a)(1) and 956(a)(2)(A); (5) conspiring to entice any minor to engage in production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e); (6) enticing any minor to engage in production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e); and (7) knowingly receiving, aiding, and abetting, and attempting to receive child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), (2). (Doc. 109.)

On October 14, 2021, Mr. Fiore, pursuant to a plea agreement, pled guilty to the following: intending that a murder be committed in violation of 18 U.S.C. § 1958(a), possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), conspiring to commit kidnapping and murder outside the United States in violation of 18 U.S.C. § 956(a)(1), and conspiring to entice any minor to engage in production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e). (Docs. 170, 171.) Mr. Fiore's advisory sentencing guideline range was 324-405 months. Following two days of hearings, on March 30, 2022, the court sentenced Mr. Fiore to a term of imprisonment of 324 months followed by a lifetime term of supervised release. On March 31, 2022, the court entered judgment. (Docs. 215, 216.) Mr. Fiore did not appeal, and the deadline for doing so expired on April 14, 2022. *See* Fed. R. App. P. 4(b)(1)(A)(i) (requiring defendant's notice of appeal to be filed within fourteen days of entry of judgment).

On July 17, 2023, Mr. Fiore filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, which was dated June 26, 2023. (Doc. 263.) On August 10, 2023, the government filed a pre-answer motion to dismiss Mr. Fiore's petition as time-barred by the one-year statute of limitations, (Doc. 269), which the court denied in a May 31, 2024 Opinion and Order. (Doc. 309.) The court ordered Mr. Fiore's defense counsel to submit affidavits addressing Mr. Fiore's claims of ineffective assistance of counsel. The government submitted affidavits by Mr. Fiore's defense counsel on September 3, 2024. (Docs. 316, 317.) It opposed Mr. Fiore's motion on September 13, 2024. (Doc. 319.) Mr. Fiore replied on November 18, 2024. (Doc. 326.) The court heard arguments and held an evidentiary hearing on the motion on May 30, 2025, at which Attorney Kampmann testified.

## II.     Conclusions of Law and Analysis.

### A.     Standard of Review.

Mr. Fiore seeks to vacate his conviction on the basis that he received ineffective assistance of counsel because his defense counsel "failed to investigate an unwarranted search and seizure that occurred on March 25, 2019, when an officer made a direct connection to a computer at [his] home and downloaded content." (Doc. 263-2 at 2.)[1] Mr. Fiore argues that he received ineffective assistance of counsel because his defense counsel: (1) failed to file a motion to suppress evidence challenging law enforcement's investigative techniques leading to the recovery of CSAM that Mr. Fiore made available on a peer-to-peer network, (2) did not argue law enforcement violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, and (3) did not argue that the government's use of investigatory software was an unauthorized pen register or trap and trace device.

The standard for ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984), is two pronged:

> A defendant claiming ineffective assistance of counsel must make two showings. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms" such that "counsel was not functioning as the 'counsel'

6

> guaranteed the defendant by the Sixth Amendment." Second, the defendant must "affirmatively prove prejudice" from the deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Ortiz*, 100 F.4th 112, 118 (2d Cir. 2024) (internal citations omitted) (quoting *Strickland*, 466 U.S. at 687-88, 693-94). "A strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance, given that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." *United States v. Guang*, 511 F.3d 110, 120 (2d Cir. 2007) (alterations adopted) (internal quotation marks omitted) (quoting *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990)).

"In considering these requirements, 'the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Ortiz*, 100 F.4th at 118 (alteration adopted) (quoting *Strickland*, 466 U.S. at 686). "In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375-76 (1986)).

"Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255). The Second Circuit has held that Section 2255 "is the appropriate vehicle for a federal prisoner to challenge the imposition of his [or her] sentence." *Id.* (emphasis omitted) (quoting *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997)).

### B. Whether Mr. Fiore Received Ineffective Assistance of Counsel Due to Defense Counsel's Failure to Argue for Suppression Based on Law Enforcement's Investigative Techniques.

Mr. Fiore argues that had his defense counsel "investigated [SA Moynihan's] affidavit and [the] circumstances leading to the affidavit, they would have identified the illegal search by the government[]" and filed a motion to suppress the CSAM and any subsequently obtained evidence. (Doc. 263-2 at 10.) He further contends that he "was convinced to accept a guilty plea without having the benefit of the court reviewing his claims. Thus, there would have been a different outcome[]" had his defense counsel filed a motion to suppress. *Id.*

"[T]he touchstone of [a Fourth] Amendment analysis [is] the question whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Oliver v. United States*, 466 U.S. 170, 177 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967)). Mr. Fiore relies on *Riley v. California*, 573 U.S. 373 (2014), to argue that "[c]omputers, like cellphones, contain 'vast' amounts of personal information, and must share the same protection. This protection is enhanced if the computer is within a private residence, as in [Mr.] Fiore's case." (Doc. 263-2 at 8.)

This court has determined that files shared on peer-to-peer networks are "made publicly available by the IP address or the software [they are] using." *Thomas*, 2013 WL 6000484, at *17. Federal courts of appeals that have examined the privacy implications of searching peer-to-peer networks for files potentially containing child pornography have unanimously concluded that a search of publicly available information does not violate a computer user's reasonable expectation of privacy.[3]

---

[3] *See, e.g., United States v. Ewing*, 140 F.4th 1339, 1349-50 (11th Cir. 2025) (finding "that the use of technology that merely accesses information voluntarily shared over a peer-to-peer network, such as Torrential Downpour, is not a search under the Fourth Amendment" because "[a] defendant has no objectively reasonable expectation of privacy in files he [or she] shares over a peer-to-peer network[]") (citation and internal quotation marks omitted); *United States v. Hoeffener*, 950 F.3d 1037, 1044 (8th Cir. 2020) ("The record reflects that Torrential Downpour searches for download candidates in the same way that any public user of the BitTorrent network searches, and it only searches for information that a user had already made public by the use of the uTorrent software. A defendant has no legitimate expectation of privacy in files made

8

The files recovered from Mr. Fiore's computer, which were shared on a peer-to-peer network, were *publicly available* files not subject to a reasonable expectation of privacy at the time the government used Torrential Downpour to recover them. This undisputed fact is dispositive. For this reason, the government's use of investigative software that allowed law enforcement to specifically target an IP address of an online user sharing CSAM material over peer-to-peer networks did not violate Mr. Fiore's Fourth Amendment rights.

Mr. Fiore focuses on the government's "not access[ing] [his] file through a public channel[,]" (Doc. 263-2 at 6), and its use of a direct connection through Torrential Downpour which he contends is not available to the public. Whether Torrential Downpour software uses a private "channel" and whether it is available to the general public are not proper questions where there is no reasonable expectation of privacy because there is no Fourth Amendment protection in either instance.[4] *See, e.g., United States v. Thomas*, 788 F.3d 345, 353 (2d Cir. 2015) (upholding district court's determination that a search warrant affidavit that relied upon evidence generated by a law enforcement proprietary automated software program, Peer Spectre, which produces a list of the online users sharing CSAM material, provided a substantial basis for a magistrate

---

available to the public through peer-to-peer file-sharing networks."); *United States v. Weast*, 811 F.3d 743, 747-48 (5th Cir. 2016) ("[The defendant] broadcast his IP address far and wide in the course of normal internet use, and he made the child pornography files and related data publicly available by downloading them into a shared folder accessible through a peer-to-peer network. Such behavior eliminates any reasonable expectation of privacy in the information, rendering *Riley* inapposite.") (footnotes omitted); *United States v. Borowy*, 595 F.3d 1045, 1048 (9th Cir. 2010) (finding defendant's argument that the government's use of a "'forensic software program' that is unavailable to the general public to confirm that the files contained child pornography" was in violation of the Fourth Amendment unpersuasive because defendant "had already exposed the entirety of the contents of his files to the public, negating any reasonable expectation of privacy in those files[]").

[4] In his motion, Mr. Fiore observes that "[t]he use of automated software [that] expedites [the process of identifying files that potentially contain CSAM] . . . is presumably what led SA Moynihan to identify [Mr.] Fiore's IP address in association with a specific torrent with a specific hash[.]" (Doc. 263-2 at 12.) In his reply, he argues that the "direct connection" established with his computer "serves as the fulcrum for [his] arguments." (Doc. 326 at 2) (internal quotation marks omitted).

9

judge's probable cause determination); *see also Maurek*, 131 F. Supp. 3d at 1263 (finding that the defendant had no reasonable expectation of privacy in files he "shared over the BitTorrent [peer-to-peer] network" and his "attempt to distinguish the law enforcement version of the software as somehow different, or more invasive, than standard [peer-to-peer] programs [did] not alter the fact that he allowed public access to the files on his computer which contained images of child pornography[]").

The computer experts retained by Attorney Kampmann on Mr. Fiore's behalf reviewed "the forensic report completed by Detective Sergeant Eric Jollymore, the search warrant application, and a copy of . . . *Thomas*[, 2013 WL 6000484.]" (Doc. 317 at 9, ¶ 29.) Mr. Verronneau and Mr. Faria also confirmed Attorney Kampmann's understanding of the process through which the government established a direct connection with Mr. Fiore's computer:

> The search warrant affidavit at paragraph 12 states that *investigative BitTorrent software* was employed in the investigation and that a *direct connection* was made (to what turned [out] to be Mr. Fiore's device). It was clear from this wording to [Attorney Kampmann] that specialized law enforcement software, "investigative BitTorrent software[,]"[] had been used to make a direct connection to Mr. Fiore's device. This direct connection was made by the agent once a torrent with an infohash identified as being a file of investigative interest to child pornography investigations had been identified during an online investigation on the BitTorrent network.

*Id.* at 10, ¶ 35 (emphasis in original).

The computer experts "explained that specialized law enforcement tools allow for a single user download, and that a particular IP address can be a sole candidate for a particular download when a direct connection is made[.]" *Id.* Based on Attorney Kampmann's understanding of the government's investigation, she did not find any "case law that deemed a direct connection through investigative law enforcement software a search in violation of the [F]ourth [A]mendment." *Id.* at ¶ 36. For that reason, she decided not to pursue a motion to suppress on the direct connection and non-public software basis.

Mr. Fiore nonetheless argues:

10

> The Supreme Court has ruled [that] "[w]here . . . the [g]overnment uses a device that is not in general public use, to explore details of the home that would previously be[] unknowable, without physical intrusions, the surveillance is a "search" and is presumptively unreasonable without a warrant. *Kyllo v. U[nited] S[tates]*, 533 U.S. 27, [41] (2001). The government's "device" in [Mr.] Fiore's case was investigative BitTorrent software[,] and "details of the home" were a computer and personal data on it that could not be accessed by the general public through a unique two-way connection[]. The "search" occurred when SA Moynihan determined the device had a uTorrent for MAC, sought the target file, and selected it for download.

(Doc. 263-2 at 4-5) (first and second alterations in original).

In this case, however, it is undisputed that the file found by SA Moynihan was previously shared by Mr. Fiore on a peer-to-peer network. Once that public sharing occurred, Mr. Fiore did not have a reasonable expectation of privacy in the shared files. *Kyllo* is therefore inapposite. *See United States v. Hoeffener*, 2018 WL 2996317, at *11 (E.D. Mo. May 9, 2018) (finding the Supreme Court's holding in *Kyllo* did not apply because it did not "involve a defendant's use of file sharing software and its impact on his [or her] expectation of privacy[]").

In light of the unanimous weight of the authority in favor of the government's position, including controlling precedent for the Second Circuit, and the absence of any contrary authority supporting Mr. Fiore's position, a motion to suppress based on *Kyllo* would not have been "meritorious." Mr. Fiore's defense counsel's decision not to file a motion on *Kyllo* grounds therefore did not fall below an objective standard of reasonableness. Mr. Fiore has therefore failed to establish a *Strickland* violation on this basis.

### C.     Whether the Good Faith Exception to the Exclusionary Rule Applied.

Mr. Fiore argues that the evidence subsequently obtained from the search warrant would have been suppressed as fruit of the poisonous tree because the good faith

11

exception to the exclusionary rule would not have applied in this case.[5] He asserts that SA Moynihan "used misleading and false information in and omitted key information from the affidavit." (Doc. 263-2 at 9.) He contends that, in using the term "direct connection" in her affidavit, SA Moynihan misled the magistrate judge to believe such a connection is typical of a public BitTorrent and that the omission of information regarding how Torrential Downpour operates was similarly misleading.

"A determination that the warrant at issue was not supported by probable cause to search . . . does not automatically dictate the suppression of all physical evidence seized or statements derived therefrom, because suppression is our last resort, not our first impulse." *United States v. Silva*, 146 F.4th 183, 188 (2d Cir. 2025) (internal quotation marks and brackets omitted) (quoting *United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011)). Where the government obtains evidence "in objectively reasonable, good-faith reliance on a subsequently invalidated search warrant, [a court] do[es] not require its exclusion." *Id.* at 189 (internal quotation marks omitted) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). In *Leon*, the Supreme Court identified four circumstances in which a court may not find that the government acted in good faith:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923). None of these circumstances are present here.

In SA Moynihan's 22-page affidavit, she used the term "direct connection" once to explain how files referenced in the Torrent are obtained from the BitTorrent network. *See* Doc. 319-1 at 7 ("The actual file(s) referenced in the 'Torrent' are obtained directly from other users (peers/clients) on the BitTorrent network. This means the download of a

---

[5] Mr. Fiore's argument that the good faith exception does not apply to the search warrant relies on his argument that the government's recovery of the files from his computer constituted an unlawful search.

file is achieved through a *direct connection* between the computer requesting the file and the computer(s) sharing the actual file(s)[.]") (emphasis supplied). This statement was accurate and therefore not misleading.

SA Moynihan's affidavit included detailed explanations regarding the investigation and the information relevant to the probable cause determination. To aid in the review of the document, SA Moynihan defined relevant technical terms and explained the investigator's use of computers, electronic storage, and forensic analysis. This is thus not a case in which "the application [was] so lacking in indicia of probable cause as to render reliance upon it unreasonable[.]" *Moore*, 968 F.2d at 222 (citing *Leon*, 468 U.S. at 923).

For the foregoing reasons, even *assuming arguendo* that some deficiency existed in SA Moynihan's affidavit, exclusion of the evidence obtained pursuant to the search warrant would not have been required under the good faith exception to the exclusionary rule.

### D. Whether Mr. Fiore Received Ineffective Assistance of Counsel Due to Defense Counsel's Failure to Argue for Suppression Based on Violations of the SCA and ECPA.

#### 1. The SCA.

In obtaining the CSAM from his computer, Mr. Fiore asserts the government violated Sections 2701(a) and 2703(a) of the SCA. He contends that "[c]ounsel failed to investigate torrent files as electronic communications that contain transactional records and content derived from transmission of the communication, that such communications are not public, [meaning] the government violated [the SCA] by obtaining content and records from [Mr.] Fiore's communications in storage without proper authorization." (Doc. 263-2 at 11.)

"Under the [SCA], whoever '(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished.'" *Yukos Cap. S.A.R.L. v. Feldman*,

977 F.3d 216, 230 (2d Cir. 2020) (quoting 18 U.S.C. § 2701(a)). Under the ECPA,[6] "[e]lectronic storage' means 'any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof,' and 'any storage of such communication by an electronic communication service for purposes of backup protection of such communication.'" *Id.* (quoting 18 U.S.C. § 2510(17)). An "electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic[,] or photooptical system that affects interstate or foreign commerce[.]" 18 U.S.C. § 2510(12) (internal quotation marks omitted).

Section 2703(a) of the SCA provides,

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . . A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

18 U.S.C. § 2703(a). The means for requiring disclosure of an electronic communication under § 2703(b) includes by an administrative subpoena or a court order.

Mr. Fiore argues that "SA Moynihan [acted] in violation of 18 U.S.C. § 2701(a) when she employed investigative software to pry through network traffic, decoded non-public information from torrent-text, and obtained the hash code and IP transactional history." (Doc. 263-2 at 15.) Citing the dictionary definition of a "facility,"[7] he argues that "BitTorrent qualifies as a facility because it is built b[y] programmers, installed by

---

[6] The ECPA defines electronic storage and electronic communication, *see* 18 U.S.C. § 2510(12) and (17), but courts also apply these definitions to the SCA. *See, e.g., Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 230 (2d Cir. 2020).

[7] "A facility is defined as 'something built, installed, or established to serve a particular purpose.'" (Doc. 263-2 at 15) (quoting Merriam-Webster's Collegiate Dictionary, 11th ed., 2012).

14

users, and serves the purpose of electronically transmitting information[.]" *Id.* He provides no authority to support this assertion, nor does he provide case law holding that the SCA applies to a private citizen who makes CSAM publicly available on a peer-to-peer network. The lack of support for Mr. Fiore's position makes sense in light of the prevalent use of peer-to-peer networks by both purveyors and recipients of CSAM and government officials investigating cases of child exploitation.

*Assuming arguendo* that Mr. Fiore could establish that the government violated the SCA, Section 2708 provides that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708. Section 2708's exclusive list of remedies and sanctions do not include suppression of evidence in a criminal case. The Second Circuit has accordingly stated that "suppression of evidence is not a remedy available for violation of the SCA." *United States v. Gasperini*, 894 F.3d 482, 488 (2d Cir. 2018).

For the reasons stated above, Mr. Fiore is unable to demonstrate that his defense counsel's decision not to file a motion to suppress based on a violation of the SCA fell below an objective standard of reasonableness under the prevailing professional norms, and he has not established a violation of *Strickland* on this basis.

### 2.   The ECPA.

Mr. Fiore contends that the government violated Sections 2515 and 2511(1)(a) of the ECPA by intercepting a hash code which he alleges qualifies as an electronic communication. Section 2515 provides that "[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515. Section 2511(1)(a) states that "any person who[] intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[] shall be punished[.]" 18 U.S.C. § 2511(1)(a).

15

To establish a violation of Section 2515, Mr. Fiore must show the government "intercepted" a qualifying communication, which the ECPA defines as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The Second Circuit has not yet determined whether accessing content through peer-to-peer networks constitutes an "interception" under the ECPA.

In *United States v. Hoeffener*, the Eastern District of Missouri considered whether "law enforcement's use of Torrential Downpour 'without prior judicial authorization' constituted an unlawful search under the [ECPA] . . . in violation of 'reasonable expectations of privacy under that Act.'" 2018 WL 2996317, at *12 (internal citation omitted). The court determined that the ECPA did not provide the defendant protection, given "the developing case law in the Fourth Amendment context . . . consistently rejecting the notion that an IP address or similar information is protected 'content.'" *Id.* (citing *United States v. Perrine*, 518 F.3d 1196, 1204-05 (10th Cir. 2008)).

In *United States v. Dickerman*, the Eastern District of Missouri addressed a defendant's argument that "when the law enforcement version of Freenet[,]" a peer-to-peer network, "logged the IP address, key, and date and time of requests, that constituted an interception of electronic communications" under the ECPA. 2017 WL 11485604, at *13 (E.D. Mo. Sept. 26, 2017). The *Dickerman* court held that "[e]ven if the information logged by law enforcement is deemed to be content [under the statute], there is no violation of the ECPA because the law enforcement node was a party to the communication." *Id.* at 14. The court further stated that, even if the government had violated the ECPA, "exclusion of the evidence is not an appropriate remedy[,]" because the ECPA's suppression provision "applies *only* to 'wire or oral communications,' and not to 'electronic communications[.]'" *Id.* (alteration adopted) (emphasis in original) (quoting 18 U.S.C. § 2515).

Because *Hoeffener* and *Dickerman* are well-reasoned and persuasive, it is unlikely Mr. Fiore's defense counsel would have been able to establish that the government violated the ECPA by obtaining a hash code from his file download. In any event,

16

suppression would not have been an available remedy if there was a violation of the ECPA. *See United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011) ("[E]ven if [the defendant] had shown that [the police] violated the ECPA . . . , the exclusionary rule would not be the appropriate remedy for [the] violation[]."). Mr. Fiore is therefore unable to establish that his defense counsel's decision not to file a motion to suppress on this ground fell below an objective standard of reasonableness under the prevailing professional norms. Accordingly, ineffective assistance of counsel under *Strickland* has not been shown.

### E. Whether Mr. Fiore Received Ineffective Assistance of Counsel Due to Defense Counsel's Failure to Argue for Suppression Based on an Unauthorized Wiretap.

Finally, Mr. Fiore argues that he received ineffective assistance of counsel due to his defense counsel's failure to file a motion to suppress on the basis that the government's use of investigative software constituted an unauthorized pen register or trap and trace device in violation of 18 U.S.C. § 3121. Section 3121 provides that "no person may install or use a pen register or a trap and trace device without first obtaining a court order[.]" 18 U.S.C. § 3121(a).

A "pen register" is defined as "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted[.]" 18 U.S.C. § 3127(3) (internal quotation marks omitted). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication[.]" 18 U.S.C. § 3127(4) (internal quotation marks omitted). Mr. Fiore argues that "SA Moynihan's use of 'investigative BitTorrent software' to obtain and then connect to [his] IP address . . . constitutes use of a pen register or trap[]and[]trace . . . device[.]" (Doc. 263-2 at 22.) In so arguing, Mr. Fiore relies on the Second Circuit's decision in *United States v. Ulbricht*, wherein the government obtained court orders to "'use a pen register

17

and trap and trace device to identify the source and destination [IP] addresses . . . associated with any electronic communications sent to or from' various devices, including [the defendant's] home wireless router and his laptop." 858 F.3d 71, 95 (2d Cir. 2017) (first alteration in original), *abrogated by*, *Carpenter v. United States*, 585 U.S. 296 (2018) (finding the government conducts a search under the Fourth Amendment when it accesses historical cell phone records that comprehensively describe the user's past movements). At issue in *Ulbricht* was the defendant's "creation and operation of Silk Road . . . a massive, anonymous criminal marketplace that operated using the Tor Network, which renders Internet traffic through the Tor browser extremely difficult to trace." *Id.* at 82.

*Ulbricht* is distinguishable because it does not address the transmission of information via peer-to-peer networks. Despite legal research, Mr. Fiore's defense counsel was unable to find "any case law requiring the government to obtain a subpoena for a pen register or trap[]and[]trace device prior to making a direct connection to an electronic device in order to obtain an IP address from a device using BitTorrent[.]" (Doc. 317 at 12.) His defense counsel reached this conclusion based on an understanding that "IP address[es] do[] not constitute an electronic communication[,]" *id.* at 12, because they are not responsible for routing data and are therefore not covered by the statute. A court deciding whether the government's use of investigative software to intercept files shared on a peer-to-peer network was a "wiretap" reached a similar conclusion. *See United States v. Willard*, 2010 WL 3784944, at *3 (E.D. Va. Sept. 20, 2010) (finding the government's use of a peer-to-peer network software "did not constitute a wiretap because the software does not intercept electronic communications[;]" "[i]nstead, it reads publicly available advertisements from computers identified as offering images of child pornography for distribution and identifies their IP addresses[]").

Mr. Fiore's defense counsel's analysis was reasonable, followed existing precedent, and did not fall below an objective standard of reasonableness under prevailing professional norms. No *Strickland* violation may therefore be found on this basis.

18

## CONCLUSION

For the foregoing reasons, the court DENIES Mr. Fiore's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, (Doc. 263), because Mr. Fiore has not carried his burden of establishing defense counsel's decision not to file additional motions to suppress constituted ineffective assistance of counsel.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 28th day of October, 2025.

Christina Reiss, Chief Judge
United States District Court